Harvey BARLOW, Plaintiff,

v.

Bobby T. McLEOD, et al., Defendants.

Civ. A. No. 85–0022.

United States District Court,
District of Columbia.

Dec. 2, 1986.

Bernard S. Gild, Annandale, Va., for plaintiff.

Larry McLeod, Executive Director, HDS, Inc., for HDS, Inc.

Mona M. Murphy, Feith & Zell, Washington, D.C., for Lieberman.

Bobby McLeod, pro se.

Larry McLeod, pro se.

## MEMORANDUM OPINION

FLANNERY, District Judge.

### I. BACKGROUND

This case involves a dispute over $5,000 lent by plaintiff, Harvey Barlow, to defendant Larry McLeod. Apparently, Barlow lent the money as part of an agreement with McLeod in which he was promised a job with McLeod's corporation, Human Development Systems ("HDS"), if McLeod was successful in obtaining a government contract. McLeod did not get the contract, did not hire Barlow, and then paid Barlow only $300 on the loan before defaulting.

At the time the loan was made, Larry McLeod operated HDS out of an office given him by his brother, Bobby McLeod. Bobby McLeod ran his own company, McLeod Corporation, in offices adjacent to the one he had rented for his brother. McLeod Corporation became involved in the agreement between Barlow and Larry McLeod because James Lieberman, an employee of the company who had attended law school, was asked by them to review the language of the loan agreement. Additionally, McLeod Corporation had to cash Barlow's $5,000 loan check because Barlow, apparently by mistake, named it as payee and because HDS had no bank account of its own.

After Larry McLeod's default, Barlow sued naming as defendants not only Larry McLeod and HDS, but also Bobby McLeod, McLeod Corporation, and James Lieberman. Barlow alleged a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a conspiracy to violate RICO, violations of the D.C. Consumer Protection Act, fraud, and conspiracy to defraud, in addition to an action for the money lent.

On June 10, 1986, this court affirmed a magistrate's decision to enter a default judgment against defendant HDS. On July 23, 1986, this court affirmed the magistrate's decision to impose sanctions, against defendants Bobby McLeod and McLeod Corporation for refusal to produce documents, in the form of entering a default judgment on Count VI of the complaint—the money lent. Presently before the court is defendant Lieberman's motion for summary judgment and for sanctions.

### II. MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether there is a genuine issue for trial, this court is guided by the recent Supreme Court decision in *Anderson v. Liberty Lobby, Inc.*, where the Court held that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

Before considering whether summary judgment is appropriate here, it must be noted that plaintiff has relied on implied admissions by Lieberman in his opposition to summary judgment. On September 17, 1986, however, the magistrate in this case ordered that no implied admissions are to be drawn from the defendant's alleged failure to timely respond to plaintiff's requests

for admissions. For the reasons stated in that order, this court affirms the magistrate's decision.

### A. RICO Counts

In his complaint, Barlow alleges a violation and a conspiracy to violate "the RICO statute." As Lieberman notes in his motion for summary judgment, plaintiff does not specify what subsection of the Act has been violated. Furthermore, plaintiff asserts the essential elements of a RICO claim (existence of an enterprise, how it affects interstate commerce, and a pattern of racketeering activity) in a conclusory manner. Whether or not such limited allegations could survive a Rule 12(b)(6) motion to dismiss, this court must now consider whether the allegations, in conjunction with supporting affidavits, depositions, and other documents, are sufficient to defeat a motion for summary judgment.

Taking all the available evidence in the light most favorable to the plaintiff, it is clear that defendant is entitled to summary judgment on the RICO claims. First, plaintiff has presented no evidence of a RICO enterprise. Second, plaintiff has presented no colorable evidence that defendant Lieberman was involved in a RICO violation. Third, the alleged predicate acts clearly do not constitute a pattern of racketeering activity.

■ With regards to the RICO enterprise requirement, the complaint baldly asserts that McLeod Corporation and HDS are "enterprises." There is no proof, however, that these two entities were associated for the common purpose of engaging in a course of conduct or a pattern of racketeering activity. Plaintiff's support for his contention of concerted action is limited to the fact that Larry McLeod's brother cashed Barlow's $5,000 check for him. Such support is innuendo at best, especially since McLeod's brother went to such extremes as opening a special trust account for the check, transferring the funds immediately to Larry McLeod, and informing plaintiff in writing of the entire transaction, to make sure he and his company, McLeod Corporation, operated independently of Larry McLeod and his company, HDS.

Obviously this court's function is not to weigh this evidence, but only to determine whether it is sufficient to present an issue for trial. Where, as here, the evidence is at best "merely colorable" and "is not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. at 2511.

■ Plaintiff has also presented no colorable evidence that defendant Lieberman was involved in a RICO violation. Lieberman's only connection to the transaction with Barlow was that he was asked to look over the loan agreement and suggest technical revisions—presumably based on his legal knowledge. Barlow has admitted in a deposition, however, that he did not rely on Lieberman's presence and would have entered the agreement anyway. Barlow deposition, March 13, 1986, at 170–72. His complaint details no specific acts by Lieberman other than a generalized claim that he was part of a fraudulent scheme to dupe the plaintiff out of the $5,000. Such an allegation does not set forth even a RICO conspiracy claim.

■ A RICO conspiracy allegation requires pleading the existence of at least one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy. *Van Dorn Co., Central States Can Co. Division v. Howington,* 623 F.Supp. 1548, 1559 (N.D. Ohio 1985) (and cases cited therein). Not even plaintiff's opposition to the motion for summary judgment, let alone the original complaint, sets forth a proper RICO conspiracy claim because plaintiff's allegation on this count is a mere conclusion. *See id.* Plaintiff does not permit defendant Lieberman to identify the conspiracy that he is alleged to be a part of. *Id.*

■ In fact, in the complaint's two RICO counts, plaintiff makes no reference at all to any acts by Lieberman that supported or furthered the alleged fraud. Plaintiff's opposition to the motion for summary judgment makes no attempt to substantiate any of the complaint's allegations. Plaintiff merely repeats the allegations and then claims he has met the elements for a RICO

claim. It is clear, however, that a party opposing a properly supported motion for summary judgment "may not rest upon the allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. at 2510. In *First National Bank of Arizona v. Cities Service Co.,* the Supreme Court ruled that the plaintiff could not rest on his allegations of a conspiracy to get to a jury without "any significant probative evidence tending to support the complaint." 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). Similarly, in the case at bar, plaintiff's failure to support his allegation of Lieberman's commission of overt predicate acts, or of Lieberman's involvement in a conspiracy to defraud, justifies summary judgment on the issue of whether Lieberman was involved in a RICO violation.

■ Finally, even if plaintiff had come up with sufficient facts to create a genuine issue for trial regarding whether there was a RICO enterprise, whether Lieberman was involved in the alleged predicate acts, and whether Lieberman conspired to violate RICO, the RICO counts must be dismissed as frivolous since the alleged scheme to defraud cannot constitute a pattern of racketeering activity, the crucial element of a RICO violation. The term "pattern" is not precisely defined by the Act but the Supreme Court recently issued some guidance on the matter as part of its decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

*Sedima* dealt with an attempt by various courts to create restrictions on the sweeping expansiveness of civil RICO. The Supreme Court rejected those attempts holding that RICO must be given the broad effect mandated by its plain language. The Court did suggest, however, that one means of limiting RICO has been overlooked. It indicated that it disagreed with the broad construction of the term "pattern" given by the majority of lower courts. A pattern of racketeering requires at least two acts of racketeering activity.

18 U.S.C. § 1961(5). The Court noted that this implies that "while two acts are necessary (for the pattern requirement to be met), they may not be sufficient." *Sedima,* 105 S.Ct. at 3285 n. 14. The separate racketeering acts must reflect both "continuity" and "relatedness" in order to constitute a pattern. *Id.* Thus, simply alleging racketeering acts is not enough to allege a RICO pattern. Something more than the mere predicate acts is required.

What this "something more" is has already created some debate among the Circuits since the *Sedima* decision. While acknowledging the Supreme Court's comments on the pattern requirement, the D.C. Circuit has not yet had an opportunity to apply them. *Berg v. First American Bankshares, Inc.,* 796 F.2d 489, 502 (D.C. Cir.1986). In other circuits the split appears to have gone three ways.

The Eleventh Circuit has rejected any need for the predicate acts to occur in different criminal episodes or schemes in order to be sufficiently continuous to satisfy the pattern requirement. *Bank of America v. Touche, Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986). The court set out no standard or test but merely decided that nine separate acts of mail and wire fraud over a period of three years was a pattern. *Id.* The Eighth Circuit, however, has held that where the predicate acts are all part of a single scheme, there may be a relationship between them but there is insufficient continuity to produce a "pattern." *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986); *see also id.* at 257–58 n. 8 (cases cited therein). The court ruled that even though several related acts of mail and wire fraud had been proven in connection with the theft of gas from a pipeline, the actions were all part of one continuing plan and thus only revealed an isolated criminal scheme as opposed to a pattern of illegal activity. *Id.*

Finally, a number of courts have taken a middle course between the two prior views. Most notable is the Seventh Circuit whose decision and reasoning regarding RICO in *Haroco, Inc., v. National Bank and Trust Co.,* 747 F.2d 384 (1984), *aff'd,* 473 U.S.

606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), was upheld by the Supreme Court in *Sedima.* In a thorough and searching opinion analyzing the meaning of RICO's pattern requirement, the Seventh Circuit acknowledged that subsequent to the Supreme Court's decision in *Sedima,* the mere commission of predicate acts does not automatically constitute a pattern of racketeering activity. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). The court held, however, that there is no requirement that predicate acts occur as part of separate schemes. It reasoned that such a requirement would allow defendants who commit a single, large and on-going scheme to escape RICO liability. *Id.* at 975.

Instead, predicate acts, to be sufficiently continuous to constitute a pattern of racketeering activity, must be ongoing over an identified period of time so that they can be viewed as separate transactions—transactions " 'somewhat separated in time and place.' " *Id.* (quoting *United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn. 1975)). The court noted that relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* at 975. It stressed, however, that the determination depends on the facts and circumstances of the particular case with no one factor being necessarily determinative. *Id.*

Without guidance from our own Circuit on the issue, this court finds the Seventh Circuit approach the most reasoned and persuasive. The Supreme Court's language in *Sedima,* in both the majority opinion and the dissent by Justice Powell, clearly indicates that a pattern of racketeering activity requires more than the mere predicate acts. The Seventh Circuit's "separate transaction" approach is an entirely reasonable extension of the Supreme Court's discussion of the "pattern" concept. It will not operate to exclude defendants of large, complicated schemes as would a narrower construction of the pattern requirement (such as the Eighth Circuit's "separate scheme" approach).

Using the "separate transaction" approach in the case at bar, plaintiff has clearly failed to allege, or produce facts supporting the finding of, a pattern of racketeering activity. Even if one assumes the defendants committed instances of mail and wire fraud, the alleged acts occurred over a short period of time, victimized only the plaintiff, resulted in only one injury, and related only to a single act—acquiring a $5,000 loan. Plaintiff has not specified how many predicate acts occurred, but the determination at this point is irrelevant. All of these alleged predicate acts relate to only one transaction. The mere fact that to effect this transaction a number of phone calls had to be made and a number of letters mailed, does not make these predicate acts a series of separate transactions distinct in time and place. There is no threat here of continuing criminal activity, and it is important to remember that RICO was intended to deal with such a threat—not with one instance of fraud with a single victim. *See* S. Rep. No. 617, 91st Cong., 1st Sess. 158 (1969).

A similar result was reached by the Seventh Circuit in *Lipin Enterprises v. Lee,* 803 F.2d 322 (7th Cir.1986). Though decided shortly before *Morgan v. Bank of Waukegan, Lipin* was cited approvingly there as a decision consistent with the Circuit's "separate transaction" approach. *Morgan,* at 976. In *Lipin,* the plaintiff was able to point to multiple predicate acts as part of a scheme to defraud him of stock. As in the instant case, however, the existence of multiple acts was only because the transaction (acquiring stock in *Lipin;* securing a loan in the case at bar) necessitated generating numerous pieces of paper. *Lipin,* at 323; *Morgan,* at 14. All the predicate acts nevertheless related to but a single transaction. *Id.* Thus, the court held that the complaint was properly dismissed for failure to allege a pattern of racketeering activity. *Lipin,* at 324. Barlow's RICO claims must therefore be dismissed as well.

### B. D.C. Consumer Protection Act Violation

■ Count III of plaintiff's complaint alleges violations of the District of Colum-

bia's Consumer Protection Act. D.C.Code Ann. §§ 28–3901 to 3908 (1981). The Consumer Protection Act is designed to prohibit certain frauds against persons who purchase, lease, or receive goods or services that are primarily for personal, household, or family use. D.C. Code Ann. § 28–3901(a)(2). Clearly, plaintiff is not a consumer under the Act. Under no stretch of the imagination could the transaction in this case be considered a purchase, lease, or receipt of consumer goods or services. Furthermore, the Court of Appeals for the District of Columbia has ruled that "the Act was designed to police trade practices arising *only* out of the consumer-merchant relationship." *Howard v. Riggs National Bank*, 432 A.2d 701, 709 (D.C.1981) (emphasis added). Since it is evident that the Act is inapplicable to the instant suit, summary judgment must be granted on this count.

### C. Common Law Counts

■ Plaintiff's remaining claims allege common law violations that must also be dismissed. First, this court lacks subject-matter jurisdiction over the claims now that the federal statutory counts (i.e., the RICO counts) have been eliminated. The complaint provided for jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and pursuant to pendent jurisdiction. The D.C. Consumer Protection Act and common law claims are therefore before this court only on the limited basis of the pendent jurisdiction doctrine. As the Supreme Court has stated, however, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Additionally, since pendent jurisdiction is discretionary with the court, this court will not exercise such power to hear the common law claims in the instant case.

■ Second, even if this court had jurisdiction to hear the remaining claims, the fraud claims would have to be dismissed under Rule 9(b). Federal Rule of Civil Procedure 9(b) requires that all circumstances constituting fraud be stated with particularity. At least in regards to defendant Lieberman, plaintiff's complaint is woefully inadequate. Plaintiff merely alleges that Lieberman defrauded and conspired to defraud him with no indication of what role Lieberman had to play in the alleged fraud.

■ Finally, summary judgment is appropriate as to the remaining claims simply because of a lack of factual support. Count IV is a claim of common law fraud which requires proof that defendant (1) made a false representation or willful omission (2) with respect to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive plaintiff, and (5) that plaintiff acted in reliance on the false representation. *Peckarsky v. American Broadcasting Co.*, 603 F.Supp. 688, 693–94 (D.D.C.1984). There has been no allegation that Lieberman made any false representations as a result of his review of the loan agreement. Even if there were such an allegation, plaintiff has admitted he placed no reliance on Lieberman. The only alleged misrepresentation regarding Lieberman was that Larry McLeod introduced him as a vice-president of McLeod Corporation. There is no explanation as to how that is material to the transaction with McLeod, but even if it was material, plaintiff's admitted lack of reliance on Lieberman is dispositive. Thus the essential elements of material misrepresentation, intent to induce reliance, and reliance are all absent in the case at bar.

■ ■ Count V is a claim of conspiracy to defraud which requires proof of the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result. *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C.1984). Plaintiff has produced no probative evidence supporting a claim that Lieberman participated in the alleged conspiracy to defraud. In fact, there is very little evidence of any conspiracy at all. The available evidence indicates that Lieberman was no more than a bystander to the loan transaction. He played no role in the negotiations, his advice was not sought on any substantive details, and he had no contact

with or function regarding the acquisition of the money. Clearly, any proof of Lieberman's involvement in a conspiracy is absent here.

 Finally, Count VI is a claim for money had or received, or for money lent. Money had or received basically requires proof that Lieberman has been unjustly enriched at Barlow's expense by receiving money from him which in equity and good conscience should be returned. *See Hillyard v. Smither & Mayton, Inc.,* 76 A.2d 166, 167 (D.C.1950). A claim for money lent requires proof that Lieberman is indebted to plaintiff in the amount claimed. *See Ellis v. Ware,* 102 A.2d 756 (D.C.1954). Plaintiff has provided not the slightest scintilla of evidence in support of either of these two allegations. Lieberman never came into possession of the $5,000 and was certainly not a party to the loan agreement. Obviously then, there is no basis for permitting such claims to go to the jury.

In summary, plaintiff has tried to rely on mere allegations to oppose defendant's motion for summary judgment. Despite extensive discovery, plaintiff has failed to produce the slightest factual support for his claims. This court will not require the defendant to contest at trial serious charges on grounds that are so flimsy as to be non-existent. The motion for summary judgment is therefore granted.

### III. MOTION FOR SANCTIONS

 A motion for sanctions under Rule 11 should not be lightly made by a party or granted by a court. This court is very much aware of the serious effect the granting of the sanction may have upon a lawyer's professional record and reputation in the community. Nevertheless, Rule 11 imposes an obligation on courts to step in and sanction attorneys who fail to satisfy their affirmative duties under the rule. Fed.R. Civ.P. 11 ("If a pleading ... is signed in violation of this rule, the court ... *shall* impose ... an appropriate sanction." (emphasis added)).

Rule 11 places two requirements on lawyers. First, attorneys may only sign a pleading that after a reasonable inquiry they believe is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Second, attorneys must not interpose pleadings for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation. Fed.R. Civ.P. 11. It is not necessary that an attorney be deemed to have violated both requirements before he or she may be sanctioned. Yet in the case at bar, it is quite apparent that plaintiff's counsel has breached both duties.

As has been discussed earlier in this opinion, plaintiff's complaint and opposition to the motion for summary judgment are woefully lacking in details. The pleadings consist almost entirely of conclusory allegations—a severe shortcoming especially in the context of the opposition to the motion for summary judgment. This lack of specificity strongly suggests that counsel had no factual basis for bringing the action against Lieberman. The magistrate in this case had flagged this as a potential problem in his June 10, 1986 order imposing a default judgment against the other defendants for not cooperating in discovery. In that order, the magistrate noted that with regards to plaintiff's RICO claim, it "appears that the plaintiff is merely hoping that through the production he may hit pay dirt."

It seems then that plaintiff filed the complaint against Lieberman either in the hope that discovery would uncover evidence of a claim, or in the hope that Lieberman would settle rather than face the time and expense of litigating the matter. Whether conducting a fishing expedition or harassing the defendant, counsel's failure to make sure the original complaint was well grounded in fact is clearly a violation of Rule 11. Furthermore, counsel's continuation of the suit by filing the opposition to the motion for summary judgment, after discovery had yielded no support for the claims and after the magistrate had flagged the Rule 11 problem, exacerbated the violation. It must have been obvious to plaintiff's attorney that the suit against

Lieberman was meritless and yet he insisted on taking the defendant's and the court's time to entertain the action.

Counsel's violation of Rule 11 is not limited to the blatant lack of factual support. As has already been discussed at length, plaintiff's conclusory allegations do not support RICO or Consumer Protection Act claims. Neither existing law, nor a good faith argument for its extension, warrant these statutory counts. First, plaintiff had no business filing RICO claims. There were no grounds for alleging a RICO enterprise, a RICO conspiracy, or Lieberman's involvement in any predicate acts. Furthermore, a reasonable inquiry, at the time plaintiff filed the opposition to the motion for summary judgment, into the developments in RICO law would have shown that the purported fraud forming the basis of this lawsuit fails to constitute a pattern of racketeering activity. Second, the Consumer Protection Act claim is entirely frivolous since the law regarding that Act was well settled even at the time the complaint was filed. A reasonable inquiry would have shown that the plaintiff had no standing to bring such a claim.

It is clear that the only reason these statutory claims were alleged was because they contain treble damages provisions. Counsel has therefore not only failed to make sure the pleadings he signed were well grounded in fact and warranted by law, but he has also interposed the pleadings for improper purposes. Use of the statutory claims in a context such as the instant case smacks of exactly the kind of bad faith Rule 11 sanctions were created to curb.

Even without Rule 11, counsel's bad faith would justify shifting attorneys' fees. *Copeland v. Martinez,* 603 F.2d 981, 984–85 (D.C.Cir.1979). There is, however, ample support for the imposition of Rule 11 sanctions, and for their use in the context of frivolous RICO claims. *See, e.g., Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783 (5th Cir.1986); *Samuelson v. Union Carbide Corp.,* No. 85 Civ. 5373 (WCC) (S.D.N.Y. Jan. 29, 1983) [Available on WESTLAW, DCT database]; *Mosler v.*

*M/K Ventures International, Inc.,* No. 84 C 2178 (N.D.Ill. Sept. 20, 1984) (LEXIS, Genfed library, Dist file); *Financial Federation, Inc. v. Ashkenazy,* [1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 91,489 (C.D.Cal.1983). In fact, in *Mosler v. M/K Ventures International, Inc.,* No. 84 C 2178 (N.D.Ill. Sept. 20, 1984) (LEXIS, Genfed library, Dist file), the court awarded some of the defendants their costs and attorneys' fees in a situation very similar to the case at bar.

In *Mosler,* the plaintiffs instituted an action alleging securities violations, fraud, breach of fiduciary duty, and RICO violations. *Id.* at 2 (of 6 page LEXIS printout). In reviewing the pleadings, the court found that plaintiffs had implicated anyone even tangentially related to the underlying transaction—a sale of partnership interests in oil and gas wells. *Id.* at 3. It also noted that the complaint stated only conclusory allegations and that except for three instances, there were only "blanket references to 'defendants' scattered throughout the complaint," rather than specific counts of each defendant's wrongful conduct. *Id.* In addressing the motion for sanctions, the court stated: "Plaintiffs, cavalierly, do not address the merits of this motion, but rather, state that the 'prematurity and frivolousness of that motion is obvious.' This court disagrees." *Id.* at 4. The court therefore concluded:

> the unsupported allegations regarding the Victor defendants, requiring them to defend this action, warrant the imposition of sanctions against plaintiffs' attorney who signed the complaint in violation of the tenets of Rule 11. A reasonable inquiry into the facts and law of this case would have deterred the attorney from filing charges against these defendants.

*Id.* at 5.

Similarly, in the instant case, plaintiff has implicated anyone even tangentially related to the loan transaction with Larry McLeod. The complaint and the opposition to the motion for summary judgment state only conclusory allegations with mere blanket references to "defendants" and no specifics as to Lieberman's alleged wrongful

conduct. Plaintiff's counsel also does not address the merits of defendant's motion for sanctions. Instead, he "cavalierly" tries to brush the arguments aside by giving a one-paragraph, *ad hominem* attack as support for denial of the motion. As in *Mosler,* such actions warrant the imposition of sanctions.

Rule 11 does not preclude counsel from advancing innovative claims and contentions. Nor is it intended to chill vigorous advocacy. Nothing of the sort is involved here, however. Rule 11 imposes a standard of reasonableness which plaintiff's counsel has clearly violated through his inadequate inquiry into the merits of the claims against defendant Lieberman, both at the time the complaint was filed and at the time the opposition to summary judgment was filed.

Accordingly, defendant's motion for sanctions under Rule 11 is granted. Defendant Lieberman is entitled to his costs and attorneys' fees incurred in defending this suit. The sanction is to be paid by plaintiff's counsel, Bernard S. Gild, Esq., and not by plaintiff. Defendant Lieberman is hereby directed to submit within fourteen days from the date of this opinion, a motion to this court for fees incurred, setting forth amounts and a schedule of time spent, with supporting documentation and affidavits. Mr. Gild will have the opportunity to respond as to the reasonableness of the fees requested by the defendant.