**LONG DISTANCE SERVICE OF WASHINGTON, INC., Plaintiff,**

v.

**MCI TELECOMMUNICATIONS CORPORATION, Defendant.**

**Civ. A. No. 87–3185.**

United States District Court, District of Columbia.

April 6, 1988.

Gerald P. Norton, Pepper, Hamilton & Scheetz, Washington, D.C., for plaintiff.

John P. Wintrol, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Washington, D.C., for defendant.

MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiff Long Distance Service of Washington, Inc., is suing another long distance telephone service business under several common law theories and the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982). Plaintiff has abandoned its claim of diversity jurisdiction and relies solely on the RICO Act for federal jurisdiction. Plaintiff's Opposition (Opp.) at 1. Defendant MCI Telecommunications Corporation has moved the Court to dismiss the RICO count for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and to decline to exercise pendent jurisdiction over the remaining state-law claims. Upon consideration of the motion to dismiss filed by defendant, plaintiff's opposition, and the reply thereto, and having given plaintiff an opportunity to amend the complaint in light of recent decisions, the Court shall grant the defendant's motion and dismiss the complaint without prejudice.

## I. Background

Plaintiff, a Delaware corporation, provides long distance service to customers in Washington, D.C., Virginia, and Maryland. This dispute arises from a contract signed on June 10, 1985, for plaintiff to receive services from Satellite Business Services (SBS).[1] SBS agreed to provide plaintiff with "partitioned switch service," a system where plaintiff would use a leased "interexchange carrier" switch. The local telephone company then routes long distance telephone calls from plaintiff's customers to the leased interexchange carrier switch for handling. In addition to allowing plaintiff to use the interexchange carrier switch, SBS was responsible for properly loading the telephone number or automatic number identification of each of plaintiff's custom-

ers into the telephone system to enable the customer to call long distance.

On March 1, 1986, MCI Communications Corporation, the parent company of defendant,[2] merged with or acquired SBS, which up to that point had been owned by International Business Machines Corporation (IBM). Plaintiff's difficulties, as recounted in the complaint, began shortly after MCI took over responsibility for providing partitioned switch service to plaintiff. Those difficulties were several, and are recited in plaintiff's claims for breach of contract, negligence, fraud, tortious interference with contractual relationships, and unfair trade competition.

The sole basis of federal jurisdiction is the count alleging a RICO Act violation, 18 U.S.C. § 1962(c). The complaint alleges that defendant's employees devised numerous schemes to defraud plaintiff and mislead plaintiff's customers. The complaint alleges that defendant misappropriated at least six customers of plaintiff, and is attempting to misappropriate others, through acts of mail fraud and wire fraud. According to the complaint, the misappropriation occurred when defendant contacted plaintiff's customers and informed them that the customer now had to use an MCI code to dial long distance and when defendant falsely claimed that certain customers had chosen MCI when they had in fact chosen plaintiff.

## II. Discussion

RICO seeks to inhibit "racketeering activity" defined as, *inter alia*, "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B). Plaintiff seeks to rely to that part of RICO providing that any person may recover treble damages and attorneys fees if "injured in

---

1. The facts are drawn from the complaint. In ruling on a motion to dismiss, courts are obliged to treat the allegations of the complaint as true and may not dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

2. Defendant is a Delaware corporation. Complaint ¶ 2.

his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962 defines those acts prohibited by the Act for which damages may be obtained. Plaintiff founds its claim on section 1962(c):

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, in order to plead a section 1962(c) violation, a plaintiff must allege at least four elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

Defendant claims plaintiff's RICO pleading is fatally defective in several respects. The Court agrees that the complaint fails to satisfy the requirement of nonidentity of the person and enterprise and fails to allege a legally sufficient pattern of racketeering activity.

### A. Nonidentity of Enterprise and Person

■ Most courts, including the D.C.Circuit, have construed the phrase "any person employed by or associated with any enterprise" to require that the "person" who engages in racketeering activity be separate from the "enterprise" with which it interacts. *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 839 F.2d 782, 789–92 (D.C.Cir. 1988); *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir.1986); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984); *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank*, 725 F.2d 478, 480–81 (9th Cir.1984); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982),

*cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Thus, to maintain a RICO claim, the alleged "person" cannot be the same as the alleged "enterprise," and, in the case of a corporation, the corporation may not be both the enterprise and the person.

Plaintiff, in papers filed before *Yellow School Bus* was decided, did not attempt to satisfy the nonidentity requirement but simply urged the Court to reject the requirement. Opp. at 2–6. The Eleventh Circuit stands alone in rejecting the requirement, *see U.S. v. Hartley*, 678 F.2d 961 (1982). The Court, of course, is constrained to follow *Yellow School Bus*. Notwithstanding that recent development, however, the Court is not persuaded by the reasoning of *Hartley* and instead would join the majority view that section 1962(c) was intended to punish the person who conducts the affairs of an otherwise legitimate business in an illegal manner. The victimized business, therefore, cannot be that "person." The Court agrees with the First Circuit that "it stretches the language too far to suggest that a corporation can be employed by or associated with itself." *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 31 (1st Cir. 1986).

On February 24, 1988, plaintiff moved the Court to hold defendant's motion to dismiss in abeyance until March 28, 1988, so plaintiff's counsel could reevaluate the case in light of the post-complaint decision in *Yellow Bus Lines*. The Court granted the motion, but plaintiff's counsel has taken no action and the requested time has elapsed.

### B. Pattern of Racketeering Activity

■ A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity ... the last of which occurred within 10 years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

The circuits have split on the requirements for demonstrating a pattern of racketeering. *Compare Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986)

(more than one criminal scheme necessary) *with Bank of America National Trust & Savings Association v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986) (one scheme enough).

The D.C.Circuit has not addressed the division of authority directly. However, the D.C.Circuit recently held that five predicate acts of threats against property or persons in a labor dispute satisfied the pattern requirement. *Yellow Bus Lines,* at 789. The court relied on the definition of "pattern" provided in 18 U.S.C. § 3575(e) (1982):

> [c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

18 U.S.C. § 3575(e) (1982). The court concluded in *Yellow Bus Lines* that defendants "are accused of engaging in acts of vandalism and intimidation during a specific time period in pursuit of a unitary goal. We believe this scenario meets the statutory requirements for a 'pattern of racketeering activity'." *Yellow Bus Lines,* at 789.

The only case cited by the D.C.Circuit was *Sedima,* which discussed in general terms the "continuity plus relationship" requirement for a pattern of racketeering. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The court did not even acknowledge the split among the circuits, in conspicuous contrast to its extensive discussion of the nonidentity requirement concerning the "person" and the "enterprise" under section 1962(c). *See Yellow Bus Lines,* at 789-92.

The Court does not know precisely what to make of *Yellow Bus Lines* regarding the pattern requirement. The most sensible conclusion at the point may be that the D.C.Circuit saved for another day the task of providing comprehensive guidance to trial courts and litigants on the pattern requirement.

Before *Yellow Bus Lines,* at least four judges of the District Court for the District of Columbia had elected to follow the "middle road" mapped by the Seventh Circuit in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986). *See Color Systems, Inc. v. Meteor Photo Reprographic Systems, Inc.,* No. 86–2016, slip op. at 27–28 (D.D.C. May 8, 1987) (Gasch, J.) [available on WESTLAW, 1987 WL 11085]; *King v. E.F. Hutton & Co.,* No. 86–0211, slip op. at 12–16 (D.D.C. Mar. 13, 1987) (J.H. Green, J.) [available on WESTLAW, 1987 WL 8733]; *United States v. Madeoy,* 652 F.Supp. 371, 379 (D.D.C.1987) (Greene, J.); *Barlow v. McLeod,* 666 F.Supp. 222, 227 (D.D.C.1986) (Flannery, J.).

Enlarging on the Supreme Court's reference to the factors of "continuity plus relationship" among predicate acts, *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 617, 91st Cong., 2d Sess. 158 (1960)), the Seventh Circuit held that "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions." *Morgan,* 804 F.2d at 975. The Seventh Circuit's approach is the most factually based, requiring a case-by-case determination:

> Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean the acts automatically fail to satisfy the pattern requirement.

*Id.* at 975–76.

The factors applied to the allegations of this case, even viewed in the light most favorable to the plaintiff, compel the conclusion that plaintiff has failed to allege a pattern of racketeering activity sufficient to state a claim under RICO.

Plaintiff's allegations, even if true, reflect at most an effort to misappropriate long distance customers. Plaintiff asserts that at least six customers have been misappropriated and defendant's efforts are

ongoing. Complaint ¶ 78.[3]

The first *Morgan* factor is the number and variety of predicate acts and the length of time over which they occurred. Plaintiff alleges mail and wire fraud beginning no earlier than June of 1986 and continuing up to the present although no specific instances of improper conduct are alleged after termination of the contract on November 4, 1986. The number and variety of predicate acts alleged are fairly small and the length of time over which they occurred is fairly short.

The second factor is the number of victims. Defendant asserts that the complaint alleges a single victim, plaintiff. Plaintiff contends the misappropriated customers also are "victims." Even adopting plaintiff's view, the number of victims is small. The third factor is the presence of separate schemes; the complaint alleges only a single scheme to misappropriate customers. The final factor is the occurrence of distinct injuries. In this case, the only injuries would be the loss of customers by plaintiff and an unspecified but assuredly different injury suffered by the misappropriated customers.

As this review shows, the complaint fails to state a RICO cause of action because it does not establish the necessary "continuity" plus "relationship" among the predicate acts required by *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. As the Seventh Circuit recently held, the continuity requirement of *Sedima* is not satisfied where

> [t]he multiple predicate acts by [defendants] covered a short period of time (several months) and do not take on the character of being separate and distinct schemes in time and place. The acts alleged related to a single scheme to defraud a single victim in what appears to be a "one-shot" effort to inflict a single injury. Such a factual scenario simply fails to satisfy the continuity aspect of racketeering activity required by *Sedima*.

*Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1112 (7th Cir.1987).

### III.   Conclusion

 Plaintiff has failed to state a claim under 18 U.S.C. § 1962(c) and the RICO count must be dismissed pursuant to Fed. R.Civ.P. 12(b)(6). This leaves only common law counts and no basis for federal jurisdiction as no federal question is pleaded and diversity is lacking because both parties are Delaware corporations, *see* 18 U.S.C. § 1332(c) (1982) (corporation is citizen of state of incorporation and where it has principal place of business). Because the federal claim is dismissed at an early stage, the Court has no reason not to dismiss the state claims as well. *See Carnegie–Mellon University v. Cohill*, —— U.S. ——, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) (in usual case in which federal-law claims are eliminated before trial, balance of factors to be considered under pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over remaining state-law claims).

---

**3.** It is not clear how defendant's efforts to misappropriate customers can continue to the present, as the complaint alleges, when the agreement for partitioned switch service was terminated on November 4, 1986.