**FEDERAL INFORMATION SYSTEMS, CORP., et al., Plaintiffs and Counterdefendants,**

v.

**Richard Lee BOYD, et al., Defendants and Counterplaintiffs.**

**Civ. A. No. 87–2502 (RCL).**

United States District Court, District of Columbia.

Oct. 16, 1990.

Brian William Shaughnessy, Laurance James Ochs, John E. Drury, Washington, D.C., for plaintiffs.

Lee Thomas Ellis, Jr., Washington, D.C., for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on consideration of defendants Richard Boyd, McKay, Stevenson and Forest Boyd's motion to dismiss and for partial summary judgment,[1] and the opposition and reply thereto. Defendants' motion to dismiss is based on their position that plaintiffs have not adequately pled their case and that plaintiffs have failed to state a claim. Defendants' motion for partial summary judgment is incoherent.[2]

### Background

This case is an action [3] by plaintiffs Federal Information Systems Corporation ("FISC"), a District of Columbia corporation engaged in the transmission of news briefings to the press and others; Cortes W. Randell, an officer and stockholder in FISC; and Carol L. DeHaven, a claimant to shares of FISC. Defendants are United Family Federation ("UFF"), a District of Columbia nonstock, § 501(c)(3) tax-exempt corporation; Richard L. Boyd, a claimant to shares of FISC, employee of International Media Services, Inc. ("IMS News"), a division of UFF, and former husband of plaintiff Carol L. DeHaven; William P. McKay, director and officer of both UFF and its division IMS News; J. John Stevenson, director and officer of both UFF and its division IMS News; and Forrest J. Boyd, officer of IMS News and father of defendant Richard L. Boyd. In their Amended Complaint, plaintiffs allege that in September, 1984, defendant Richard Boyd, and plaintiffs DeHaven, and Randell agreed to establish and operate together a news transcription service. Their common goal, according to plaintiffs, was to build up the business and then sell the corporation. The business was incorporated on April 2, 1985 under the name Federal Information Systems Corporation, and an agreement concerning ownership shares was signed October 2, 1985.

Defendant Richard Boyd was incarcerated from November 8, 1985 through July 5, 1986, after being convicted and sentenced in the District Court for the District of Columbia on eight counts of mail fraud in

---

1. Defendant United Family Federation is in bankruptcy under Chapter 11 and did not file a dispositive motion. Hereinafter, when this opinion refers to "defendants" it does not refer to United Family Federation unless specifically included.

2. Although defendants' motion is titled a motion to dismiss and for partial summary judgment, and includes a statement of material facts not in dispute, there is no specification as to what judgment is requested. Every heading of defendants' motion asks for dismissal, and judgment is nowhere mentioned in the written memorandum, except for a statement as to the standard to be applied. Indeed, the conclusion section makes no mention of a request for any sort of "judgment" at all, only dismissal. Defendants' understanding of summary judgment is demon-

strated by their statement in the conclusion of their motion that

> The racketeering claims against the defendants must be dismissed for failure to state a claim upon which relief may be granted, and for the absence of a genuine issue of material fact.

This court does not believe that a motion for partial summary judgment is an appropriate vehicle to get certain facts to be deemed admitted, which seems the purpose of defendants here. In addition, defendants' facts are adequately contested by plaintiffs' submissions.

3. The background facts summarized here are based primarily on plaintiffs' version of the facts as outlined in the First Amended Complaint.

violation of 18 U.S.C. § 1341, and eight counts of making false statements in violation of 18 U.S.C. § 1001. During defendant Richard Boyd's incarceration he contributed nothing to the FISC business, while plaintiffs DeHaven and Randell worked actively. On June 10 and 16, 1986, defendant Richard Boyd allegedly announced his intention to harm plaintiff FISC by changing the internal structure, by firing certain persons, and by assuming control of the books of FISC. At the same time, he allegedly also announced that upon his release from incarceration, he would eliminate his then-wife, plaintiff DeHaven, from FISC. In response, plaintiff DeHaven filed for a divorce from defendant Richard Boyd on June 26, 1986, claiming a portion of the couple's claim to FISC shares as part of the marital estate. Also in response, plaintiffs Randell and DeHaven informed defendant Richard Boyd that he would be denied entry to the FISC offices to prevent him from carrying out his announced intentions.

Plaintiffs go on to describe a parallel scheme, involving Humane Family Foundation ("Humane"), a non-profit, § 501(c)(3) corporation formed in Pennsylvania with its principal place of business in Florida, devoted to the advocacy of animal rights. Humane and its principal officer, Emily F. Gleockler, were allegedly defrauded by defendants in order to gain access to Humane's financial resources. Defendants McKay and Stevenson, while employees or officers of Humane, allegedly devised a scheme to deceitfully secure property and other resources from Humane for their own purposes, including, *inter alia,* a scheme to purchase IMS News, then owned by defendant Forrest Boyd, for themselves. In furtherance of this scheme, defendants Stevenson and McKay allegedly formed defendant corporation UFF with a stated purpose of developing "an awareness in human beings of the importance of being humane toward all living beings" and falsely claimed tax exempt status under the Internal Revenue Code. On several occasions, defendants Stevenson and McKay allegedly transferred a total of at least $150,000.00 from the funds of Humane to UFF without knowledge or permission of Humane's board. UFF, in turn, purchased IMS News which became an unincorporated division of UFF when IMS News' corporate statutes were revoked for failure to pay statutory fees.

When defendants McKay and Stevenson took over IMS News through UFF, they retained former owner defendant Forrest Boyd as an officer and employee of IMS News, and added defendant Richard Boyd as an employee of IMS News. Defendant Richard Boyd, who was hired by IMS News, allegedly conspired with defendants McKay and Stevenson and others to ruin the business of FISC, using the resources of IMS News and UFF, through several illegal operations.

First, on several occasions, defendant Richard Boyd allegedly stole mail directly from FISC's United States Post Office box at the National Press Building in the District of Columbia. The mail stolen allegedly included twenty six negotiable checks payable to plaintiff corporation totaling $11,399.00, and other significant business correspondence, bills and records. The stolen mail was carried across state lines and the checks were deposited in a checking account at the Crofton, Maryland, branch of Maryland National Bank that defendant Richard Boyd created in the company name by falsely executing official bank documents. Defendant Richard Boyd allegedly kept the stolen mail until early November 1986, but denied under oath in his Maryland divorce proceeding on October 27, 1986 that the mail was in his possession.

The second method defendants allegedly used to harm plaintiffs' business was through wiretapping. Plaintiffs allege that defendants Richard and Forrest Boyd engaged in illegal wire intercepting from late August to mid September 1986. Plaintiffs allege that defendants used the information to threaten FISC with interference with a prospective sale of the company, and to divulge proprietary company information and financial data to various newspapers in a misleading manner. Defendants Richard and Forrest Boyd, McKay, Steven-

son, and UFF are alleged to have used and continue to use the information received from the wiretapping to extort information from FISC concerning its operations, finances, stock ownership, and corporate meetings.

The last method that defendants are alleged to have used to harm and harass plaintiffs is through falsely representing that defendant Richard Boyd had transferred his interest in FISC to defendant UFF. Defendant McKay, representing himself as owner of UFF and therefore owner of the assigned shares of FISC, allegedly continued to intimidate FISC with threats of lawsuits. He is also alleged to have used information seized from the wiretapping to influence the issuance of share and other corporate affairs.

In Counts One and Two of the Amended Complaint, plaintiffs allege violations of 18 U.S.C. § 1962(a), (b), (c), (d), of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), through the predicate acts of mail and wire fraud; extortion; and transportation of stolen goods in interstate commerce. In the remaining eight counts of the Amended Complaint, plaintiffs allege the common law claims of conversion, tortious interference with business opportunity, tortious interference with contractual relationships, tortious disclosure of confidential information and breach of duty, breach of contract, and illegal wire interception. Defendants' motion to dismiss addresses only the first two counts.

*Analysis*

Defendants' motion to dismiss is based on several grounds. Defendants allege that plaintiffs have not adequately pled a pattern of RICO activity; that the conspiracy allegations under the RICO statute fail because they are pled in a conclusory manner; that plaintiff FISC cannot be an enterprise for the purposes of §§ 1962(a) and (b); and that plaintiffs have no standing because they are not injured in their business or property by reason of the alleged racketeering activity. Defendants' motion, while noting that they have no authority to move on behalf of UFF, *see* memorandum of

points and authorities, motion of defendants Boyd, McKay, Stevenson and Boyd to dismiss and for partial summary judgment, at 3 note 2, attempts to do just that. Defendants argue that UFF must be dismissed because a corporation cannot conspire with its own employees, because respondeat superior does not apply to § 1962(c) where plaintiffs have not established vicarious liability, and, as to § 1962(b) and (c), because United Family and IMS News are the same corporation and IMS News is the alleged enterprise.

Defendants Richard Boyd, McKay, Stevenson and Forest Boyd may not move on behalf of United Family Federation, and so the court cannot consider any arguments made on behalf of UFF. The defendants do make arguments supporting a motion to dismiss on their own behalf which will be addressed by the court.

The standard for a motion to dismiss under Federal Rule of Civil Procedure 12 is that dismissal is only proper "when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In addition, in deciding a motion to dismiss, the "factual allegations of the complaint must be taken as true, and any doubt must be resolved in favor of the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Sufficiency of "pattern" of predicate acts for RICO.

Defendants argue that plaintiff has not sufficiently pled a pattern of predicate acts in conformity with RICO's requirements. RICO prohibits a person who has received income from racketeering activities to use the money to acquire interest in or establish an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). RICO prohibits the acquisition or maintenance of an interest in an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(b). It also prohibits a person from conducting an enterprise through a pattern of racketeering

activity. § 1962(c). Finally, RICO prohibits a person from conspiring to do any of the above mentioned activities. § 1962(d). "Racketeering activity" is defined as any act or threat involving one of many specified state crimes, including extortion, if they are punishable by imprisonment of more than one year. Additionally, any act indictable under any of many specified federal criminal statutes, also qualifies as a racketeering activity. *See* § 1961(1). Finally, the statute specifies that a "pattern of racketeering activity" requires .at least two acts of racketeering within a certain time frame. § 1961(5).

Defendants' arguments focus primarily on the issue of what constitutes a pattern of racketeering activity. They argue that most of the elements of the alleged pattern are not sufficiently pled, and those that remain do not constitute a pattern. What constitutes a pattern for the purposes of RICO has been the subject of much debate and litigation. In an attempt to clarify the statute, the Supreme Court has recently reiterated its position that a pattern requires two acts plus "something more." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, —— ——, 109 S.Ct. 2893, 2897–900, 106 L.Ed.2d 195 (1989), discussing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), That "something more" is "continuity plus relationship." These notions are in a sense opposed, because "relationship" requires that the acts be similar, either in "purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. at ——, 109 S.Ct. at 2901, citing 18 U.S.C. § 3575(e). "Continuity," conversely, requires repeated conduct, which in some cases extends into the future, thus threatening longterm criminal conduct. The Court clarified that "continuity" did not require multiple schemes, a point which had been confusing the circuits. *See* 492 U.S. at ——, 109 S.Ct. at 2902.

Here plaintiffs' pleadings have already survived a motion for a more definite statement under Federal Rule of Civil Procedure 9(b). Defendants continue to claim, however, that the elements of plaintiffs' RICO claims are not sufficiently pled, and that the only predicate acts that defendants consider .to be sufficiently pled, the transportation of stolen property in interstate commerce, do not amount to a pattern of racketeering activity. Plaintiffs allege three types of predicate acts: violations of federal mail and wire fraud statutes, extortion, and transportation of stolen goods in interstate commerce. Defendants ·argue that plaintiffs have not alleged facts showing a scheme to defraud or the intentional, rather than incidental, use of the mails and wires. Defendants also argue, citing Massachusetts law for no apparent reason, that plaintiffs have not alleged all the necessary elements of common law extortion.

The complaint must give defendants notice of the circumstances which plaintiffs believe make defendants liable. Defendants are continuing their attempt to require plaintiffs to prove their case in their complaint. The Federal Rules require no such type of pleading. Plaintiffs have plainly described defendants' efforts to gain access to the financial resources of Humane in ¶¶ 27–37, 69(a)-(i), 78(a)-(i) of the Amended Complaint. Plaintiffs cite the amount taken from Humane, when it was taken, and make various suggestions as to how Humane was defrauded. *Id.* Plaintiffs have also described how and when defendants stole plaintiffs' mail on a series of occasions, and transported it across state lines. Amended Complaint ¶¶ 43–50, 69(k)-(m), 78(K)-(m). Plaintiffs have described the defendants' use of eavesdropping and wire intercepting to acquire information later used to threaten Federal with interference with a prospective sale of the company and to attempt to influence the corporate affairs. ¶¶ 51–54, 62, 68(j), (n), (*o*), (v), (w), 78(j), (n), (*o*), (v), (w).

■ Defendants' arguments in favor of dismissal of the mail and wire fraud claim, that there is not enough description as to when and how .the fraud took place; that plaintiffs fail to allege an "active, rather than passive, fraud;" that plaintiffs fail to allege a scheme to defraud; and that plaintiffs must allege detrimental reliance, do

not persuade this court. Plaintiffs do specify that defendants defrauded Humane by misleading Humane as to the purpose of UFF and thus being able to obtain money from Humane for the private purposes of UFF on July 30, 1986 and on other occasions. Amended Complaint ¶¶ 27–37. Plaintiffs also identify an underlying theme of an intentional scheme to use fraudulently obtained Humane funds to harass and harm plaintiffs in their business and especially to deprive plaintiff DeHaven of her employment and interest in FISC. This is certainly an allegation of an "active" scheme. Finally, the detrimental reliance is implicit; it can be inferred from plaintiffs' Amended Complaint that, but for defendant McKay and Stevenson's representations about the purposes of UFF and its tax-exempt (charitable) status, Humane would not have funded defendants' fraudulent purposes.

■ Defendants also claim that plaintiffs do not make out a claim for extortion, at least under the law they cite. In the District of Columbia, where the parties are all incorporated and where most of the acts took place, a person commits extortion if she "obtains or attempts to obtain the property of another with the other's consent which was induced by wrongful threat of economic injury." District of Columbia Code § 22–3851. Plaintiffs have specified instances where defendants have threatened them with information gained from wiretapping, to deprive them of their property, including attempts to keep them from selling their business, thus depriving them of cash, and attempts to eliminate plaintiff DeHaven's interest in FISC.

Defendants do not contest the adequacy of pleading in regard to the claim that defendant Richard Boyd transported stolen property in interstate commerce; they only contest that this claim alone can be construed as a pattern under RICO, because, they claim, it was really only one single offense even though it occurred over a course of approximately a month. Because this court finds that other predicate acts are present, it is not necessary to determine whether this claim alone would amount to a pattern under RICO. The claims of plaintiffs, if true, would amount a pattern under RICO. Even though the scheme plaintiffs allege could be seen as singular, this does not disqualify an otherwise valid claim for RICO relief under the doctrine announced by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co., supra.* The "relationship" requirement is met by the common purpose of harming plaintiffs' business and plaintiff DeHaven's interest in FISC. The "continuity" requirement is met by the fact that the events took place over a number of years, and threatens to extend into the future, and that there are a number of victims of and methods to defendants' predicate acts.

Sufficiency of conspiracy allegations under § 1962(d).

■ Defendants contend that the pleadings are insufficient as to § 1962(d) because they do not allow each defendant to identify their alleged role in the conspiracy. In addition, defendants claim that plaintiffs must state facts to show that all five defendants objectively manifested their assent to the conspiracy. Defendants cite *Barlow v. McLeod,* 666 F.Supp. 222 (D.C.C.1986) for the proposition that a RICO conspiracy allegation requires a plaintiff to plead the existence of at least one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy. This court agrees that plaintiffs must allege at least one overt act in furtherance of the conspiracy for each defendant. Some of the overt acts alleged include defendants McKay and Stevenson's acts misleading Humane so as to establish and fund UFF; defendant Richard Boyd's theft of plaintiffs' mail and transportation of the stolen mail in interstate commerce; and defendant Forrest Boyd's illegal wire intercepting and use of that information to threaten FISC. This court does not agree that plaintiffs must, in their pleadings, allege an act that proves overt assent to the conspiracy. Although *Barlow,* and the Ohio District Court case upon which it relies, do deal with a civil RICO case at the pleadings stage, *see, Barlow, supra; Van Dorn Co., Central States Can Co. Division v. Howington,* 623 F.Supp. 1548, 1559

(N.D.Ohio 1985), the cases cited by the Ohio case that discuss this issue, and the cases cited by those cases, are appeals of criminal convictions which are weighing the evidence after a trial. *See, United States v. Riccobene,* 709 F.2d 214 (3rd Cir.1983); *United States v. Sutherland,* 656 F.2d 1181 (5th Cir.1981); *United States v. Elliott,* 571 F.2d 880 (5th Cir.1978). The test for sufficiency of evidence after trial in a criminal case is certainly different than the standard of pleading at a pre-discovery stage of the civil case. Any requirement that plaintiffs allege each defendant's assent to the conspiracy can be met through inference from each defendant's act in furtherance of the conspiracy.

The use of FISC as an enterprise for the purposes of § 1962(a) and (b).

■ Defendants claim that because they have no control or influence over the affairs of FISC, the counts which predicate RICO liability on § 1962(a) and (b) must be dismissed. The former subsection prohibits the use of income from racketeering "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in ... any enterprise [engaged in interstate commerce]." Plaintiffs allege that through racketeering activity, defendants received income which they are using to acquire interest in FISC. Simply because defendants are not attempting to buy FISC on the open market does not mean that they are not attempting to acquire an interest. Defendants claim that any attempts by UFF to establish their interest in FISC is based on the transferral by Richard Boyd of his claim in FISC, which predates the alleged racketeering. Plaintiffs counter that the money taken from Humane was used for the consideration paid to Richard Boyd for his assignment of his claim, citing ¶¶ 57–58 of the Amended Complaint. The court finds that these allegations make out a sufficient claim.

Section 1962(b) prohibits any person, acting "through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in [interstate commerce]." It seems clear to the court that plaintiffs' allegations that defendants have used information illegally obtained to threaten plaintiffs to force certain corporate actions is an allegation of an attempt to "control" FISC through a pattern of racketeering, namely extortion.

Plaintiffs' standing to assert a RICO claim.

■ Finally, defendants have challenged plaintiffs' standing to bring a claim under RICO, arguing that plaintiffs are not harmed in their business or property. Defendants claim that, at most, plaintiffs have alleged an injury to Emily Gleockler of Humane and that their claims of "extensive damages" as a result of the various predicate acts are not specific enough. Plaintiffs do, however, allege that $11,399.00 in checks were stolen from them; that mail containing company records and bills was stolen from time to time thus disrupting the orderly and efficient business of FISC; that their business reputation and goodwill have been tarnished by release of information gained in illegal wiretapping; and that a potential sale of the business was frustrated by the defendants. It can be inferred that the sale of the business would have been advantageous. These allegations do amount to sufficient harm to plaintiffs to give them standing to bring this action.

Turning to defendants' arguments that plaintiffs have no standing to bring a claim based on racketeering directed at Humane, this case presents a perfect example of the sort of racketeering injury the absence of which has served in several circuits as grounds for dismissal. The statute, 18 U.S.C. § 1962(a), prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity" from using or investing any part of such income "in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." The statute gives litigants standing to sue if they are "injured in [their] business or property

**978**

by reason of a violation of section 1962...." 18 U.S.C. § 1964(c).

Under the law now adopted by several circuits, but not yet addressed by the Court of Appeals for this Circuit, plaintiffs would be in a better position than Humane to bring a claim based on those allegations, at least under § 1962(a), because they were harmed by the use and investment of the racketeering money, not just the racketeering itself. *See Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147 (10th Cir.1989) (plaintiff must be injured by reason of *use or investment* of racketeering income, not the racketeering itself, to have standing under 18 U.S.C. § 1962(a)); *Quaknine v. MacFarlane*, 897 F.2d 75 (2nd Cir.1990) (same); *Rose v. Bartle*, 871 F.2d 331 (3rd Cir.1989) (same). *But c.f. Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir.1990) (those harmed by the operation of the racketeering also have standing). No matter which way this split in the circuits is ultimately resolved, plaintiffs here would have standing to complain of the use and investment of racketeering income from the racketeering at Humane to the extent that it affects plaintiffs' business or property.

### Conclusion

In conclusion, the court finds that plaintiffs have made out sufficient RICO claims in their Amended Complaint to survive defendants' motion to dismiss, and upon consideration of the foregoing, the court this day shall enter an order denying defendants' motion to dismiss and for partial summary judgment.