**DIGITAL EQUIPMENT CORPORATION,**
Plaintiff,

v.

**CURRIE ENTERPRISES,**
**et al., Defendants.**

**Civ. A. No. 91–11624–WD.**

United States District Court,
D. Massachusetts.

April 2, 1992.

**28**

Thomas S. Chase, Jeremiah T. O'Sullivan, Andrew C. Griesinger, Choate, Hall & Stewart, Boston, Mass. (James P. Shaughnessy, Digital Equipment Corp., Maynard, Mass., of counsel), for plaintiff.

J. William Codinha, P.C., Sigmund J. Roos, Beth A. O'Neill, Peabody & Brown, Boston, Mass., for defendant Warren K. Haeberle.

Nancy Gertner, Dwyer, Collora & Gertner, Boston, Mass., for defendant Dennis Palmisciano.

Regina L. Quinlan, Boston, Mass., for defendant Currie Enterprises.

Joseph J. Balliro, Boston, Mass., for defendant Philip Mario Carnovale.

James B. Krasnoo, Boston, Mass., for defendant John Trebendis.

Norman S. Zalkind, Robert L. Sheketoff, David Duncan, Zalkind, Sheketoff, Wilson, Homan, Rodriguez & Lunt, Boston, Mass., for defendant Paul A. Cooperstein.

Michael R. Taylor, Gregory J. Angelini, Leominster, Mass., Bradford Blakeley, Wayland, Mass., for defendant Joseph V. McGee.

William P. Homans, Homans, Hamilton & Dahman, Boston, Mass., for defendant Fred Kleinerman.

ORDER RE:

RENEWED MOTION OF RAYMOND B. CURRIE AND MARY J. CURRIE TO MODIFY ORDER OF ATTACHMENT AND RELEASE ESCROW FUNDS (DOCKET ENTRY # 203) and MOTION OF RAYMOND B. CURRIE AND MARY J. CURRIE TO STRIKE THE SUPPLEMENTAL AFFIDAVITS OF DIANE L. AZARIAN AND TIMOTHY E. MCCARTHY (DOCKET ENTRY # 209)

BOWLER, United States Magistrate Judge.

On February 12, 1992, 142 F.R.D. 16, this court issued an Order denying defendant Raymond B. Currie ("defendant Currie") and defendant Mary J. Currie's motions (Docket Entry ## 103, 158) to modify this court's Order of attachment entered on August 20, 1991. (Docket Entry # 197). The Order required submission of additional affidavits on the issue of injury under 18 U.S.C. § 1962(a) on or before February 28, 1992.[1]

On March 6, 1992, defendants Raymond B. Currie and Mary J. Currie (collectively: "the Currie defendants") filed a renewed motion to modify the order of attachment and to release escrow funds. (Docket Entry # 203). Also on this date, plaintiff Digital Equipment Corporation filed a supplemental memorandum in opposition to the Currie defendants' second motion to modify the opposition to the Currie defendants' second motion to modify the attachment (Docket Entry # 204) and two affidavits (Docket Entry ## 205 & 206) in response to this court's Order of February 12, 1992.[2]

---

1. As noted on page 16 of the Order (Docket Entry # 197), the attachment remained in effect pending receipt of the affidavits.

2. As noted by letter dated February 28, 1992, this court allowed plaintiff an extension of time up to and including March 6, 1992, in which to file the affidavits. (Docket Entry # 207). Although the letter confirming this extension was filed with this court, it was not served upon opposing counsel. Rule 6(b)(1), Fed.R.Civ.P., provides that this court:

> for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor

On March 12, 1992, the Currie defendants filed a motion to strike the two affidavits (Docket Entry # 209) which plaintiff opposes (Docket Entry # 212). On March 30, 1992, this court heard argument on the propriety of continuing the attachment and took the renewed motion to modify the attachment (Docket Entry # 203) and the related motion to strike (Docket Entry # 212) under advisement.

### PROCEDURAL HISTORY

On August 6, 1991, this court issued an Order allowing Plaintiff's Motion for Real Estate Attachments. (Docket Entry # 90). In accordance with this Order, on August 20, 1991, this court approved four writs of attachment, including an attachment in the amount of $3,000,000 against property owned by the Currie defendants. (Docket Entry # 109). Also on August 20, 1991, the Currie defendants filed their first motion for this court to reconsider its Order approving the $3,000,000 attachment. (Docket Entry # 103).

On September 20, 1991, the district judge held a hearing on the Currie defendants' motion for an expedited hearing (Docket Entry # 131).[3] (Docket Entry # 138). Shortly thereafter, the Currie defendants filed a motion for a further hearing on the motion to reconsider the attachment (Dock-

et Entry # 140) which this court allowed by Endorsed Order on December 17, 1991.

On November 15, 1991, the Currie defendants filed a second motion to modify the attachment (Docket Entry # 158) with supplemental exhibits (Docket Entry # 161). On December 13, 1991, the Currie defendants filed a motion to consolidate the first and second motions to reconsider (Docket Entry # 168) which this court allowed by Endorsed Order.

On December 17, 1991, this court held an extensive hearing on the motions to reconsider (Docket Entry ## 103, 158) and took the motions under advisement. On February 22, 1992, this court issued a 22-page Order denying the motions to reconsider. (Docket Entry # 197).[4] This Order specifically found that plaintiff had established a reasonable likelihood of success under section 1962(a) with the exception of the injury element under this section.[5] This court therefore directed plaintiff to file additional affidavits as to this issue on or before February 28, 1992.[6]

In compliance with this Order, plaintiff submitted affidavits by Timothy E. McCarthy ("McCarthy"), a manager in Digital Equipment Corporation's Services Logistics Organization for the past 12 years, and Diane L. Azarian ("Azarian"), an associate at the law firm of Choate, Hall & Stewart, Boston, Massachusetts, counsel for plain-

---

is made before expiration of the period originally prescribed....

Rule 6(b)(1), Fed.R.Civ.P. Plaintiff requested an extension for cause within the period prescribed by this court's Order of February 12, 1992 (Docket Entry # 197). Accordingly, this court, in its discretion, extended the time period up to and including March 6, 1992. Although this court does not approve of counsel's failure to serve the confirming letter upon opposing counsel, the extension was nevertheless a proper exercise of this court's authority.

3. This motion was filed because of a potential sale of one of the attached properties.

4. This court will therefore not reiterate the factual history detailed in this Order except as necessary to determine the issue of plaintiff's alleged injury under 18 U.S.C. § 1962(a).

5. In a supplemental memorandum in opposition to the Currie defendants' renewed motion to modify (Docket Entry # 212), plaintiff urges this

court to consider the merits of an attachment against defendant Currie under the additional claims of: (1) violation of 18 U.S.C. § 1962(c); (2) breach of contract; and (3) breach of fiduciary duty. (Docket Entry # 204). This court's Order of February 12, 1992, (Docket Entry # 197) solely addressed the reasonable likelihood of success under 1962(a), in part, because the affidavits filed by plaintiff supported this claim. Plaintiff also specifically names defendant Currie in Count II for violating section 1962(a). (See Docket Entry # 1, ¶ 73(a)). Although Count II, as well as other counts, incorporated previous paragraphs in the 153-paragraph complaint, this court proceeded under this section absent further elucidation. Because this Order finds plaintiff has established a reasonable likelihood of success as to the injury element under section 1962(a), this court will not address plaintiff's likelihood of success under the additional count(s).

6. See footnote number two *supra.*

tiff. (Docket Entry ## 205, 206). As noted *supra,* the Currie defendants move to strike (Docket Entry # 209) these affidavits and also seek to renew their motion to modify the attachment (Docket Entry # 203).

## FACTUAL BACKGROUND

In 1984, defendant Currie formed Currie Enterprises, Inc. ("Currie Enterprises"), which also did business under the name of C & C Enterprises ("C & C"), for the purpose of buying overstocked or defective computer components from plaintiff. (Docket Entry # 34, ¶ 4). In late 1984 or shortly thereafter, defendant Edward F. Desmond, Jr. ("Desmond"), an employee of Currie Enterprises, formed Carlyle–Omni Industries, Inc. ("Carlyle–Omni"), to sell plaintiff's computer components obtained through defendant Currie and Currie Enterprises. (Docket Entry # 34, ¶¶ 9–11; Ex. A, ¶ 14). These components were sold to various entities, such as Carlyle–Omni and The Moore Group, Inc. ("The Moore Group"), despite the general understanding between plaintiff and defendant Currie that equipment obtained from plaintiff "would either be immediately destroyed or if resold, would not be identifiable as Digital's equipment." (Ex. # 4, 12/17/91 hearing; Docket Entry # 34, ¶ 29).

A substantial percentage of funds paid to Carlyle–Omni by The Moore Group were paid to defendant Currie, according to affiant Kenneth B. Shiepe. (Docket Entry # 34, ¶ 11). From July, 1986, through April, 1990, The Moore Group paid approximately $7,822,225 to Carlyle–Omni or to defendant Desmond's agents. (Docket Entry # 33, ¶ 4). In addition, from 1986 through 1989, The Moore Group's annual sales totaled an estimated $46,000,000. (Docket Entry # 35, ¶ 17).

Azarian avers that "from December 1985 through June 1988, Currie Enterprises or C & M Real Estate Trust, an entity controlled by [defendant] Currie, invested at least $1,720,000 in Carlyle–Omni." (Docket Entry # 206, ¶ 4). To support this assertion, plaintiff produced copies of a number of checks paid to the order of Carlyle–Omni by Currie Enterprises, the payor. Azarian further averred that banking records produced by Currie Enterprises and Bank Hapoalim evidence the $1,720,000 investment. (Docket Entry # 206, ¶¶ 5, 6 & Ex. A). The Currie defendants counter that these checks are materially misleading, in part, because these checks are the subject of related state court litigation. This court is fully aware of this litigation and, despite arguments to the contrary,[7] these checks provide additional and adequate evidence of the monies flowing between Currie Enterprises, Carlyle–Omni and The Moore Group.[8]

McCarthy, as a manager in Digital Equipment Corporation's Services Logistics ("Logistics") Organization, avers that, through the Returned Goods Operation, Logistics receives defective, *albeit* repairable, computer components from plaintiff's customers. Logistics then furnishes its customers with new or repaired parts from its inventory. In doing so, plaintiff, through Logistics, competes with other companies that "obtain Digital equipment from a variety of other sources." (Docket Entry # 205, ¶¶ 1, 3–5). Finally, as a result of companies obtaining "spare parts through illegal channels at low cost, ... Digital's Logistics business ... suffers significant harm [because] the market is flooded with

---

7. Defendant Currie states, by affidavit, that a number of the checks drawn on Currie Enterprises and referred to by Azarian were honored by New Heritage Bank, despite the absence of his personal authorization or signature. (Docket Entry # 209, Ex. A). In July of 1988, upon learning that New Heritage Bank honored the checks, defendant Currie terminated defendant Desmond and Shiepe as employees of Currie Enterprises. (Docket Entry # 209, Ex. A, ¶ 8).

8. At the March 30, 1992, conference and in their motion to strike (Docket Entry # 209), the Currie defendants request that this court conduct a hearing on their motion to strike. (Docket Entry # 209). After serious consideration, this court deems it unnecessary to conduct yet another evidentiary hearing relating to the propriety of the attachment. LR. 7.1(C)–(E). The Currie defendants also orally moved for sanctions at the March 30, 1992, conference. This request is DENIED without prejudice to filing a written motion.

high quantities of unauthorized Digital products." (Docket Entry # 205, ¶ 5).

### DISCUSSION

The issue before this court is whether plaintiff has established a reasonable likelihood of success in regard to the requisite "injury" under section 1962(a) in order to support the $3,000,000 attachment issued against the Currie defendants. (*See* Docket Entry # 197, p. 16). Section 1962(a) "provides a cause of action only for injuries arising from the actual use or investment of racketeering income, and not for injuries arising from the underlying racketeering activity...." *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537 (D.Mass. 1986).

Plaintiff correctly notes that the circuits are split as to the application of the above investment injury rule. *See Rhone v. Energy North, Inc.*, 790 F.Supp. 353, 357 (D.Mass.1991) (noting split in circuits); *see also* Thomas Fitzpatrick and Brian O'Neill, *Elements of a RICO Action*, 155 P.L.I. 7 (1990) (noting that "majority view," held by Second, Third and Tenth circuits, requires investment injury). Plaintiff therefore urges this court to adopt the less stringent standing requirement under section 1962(a), i.e., that plaintiff need only show an injury arising from the predicate acts of racketeering.

■ Despite arguments to the contrary, the First Circuit has, in dicta, supported the investment injury rule. *Schofield v. First Commodity Corporation of Boston*, 793 F.2d 28, n. 2 (1st Cir.1986); [9] *see Rhone v. Energy North, Inc.*, 790 F.Supp. at 357 (citing *Schofield* and noting First Circuit's support for investment injury rule). Furthermore, district court decisions in this circuit adopt the investment injury rule.

*Id.* at 357 (citing cases); *Rodriguez v. Banco Central*, 727 F.Supp. 759, 771 (D.P.R. 1989), *appeal dismissed*, 917 F.2d 664 (1st Cir.1990); *McIntyre v. Okurowski*, 717 F.Supp. 10, 13 and n. 5 (D.Mass.1989); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. at 1537.

Plaintiff must therefore show an injury derived from defendant Currie's use or investment of racketeering income. "The gravamen of the offense under § 1962(a) is not the racketeering activity itself, but the subsequent use and investment of the proceeds." *Id.* at 1537. Injury resulting from racketeering activity alone is insufficient.

■ Defendant Currie's activities, nevertheless, meet this higher standard. Despite the understanding between plaintiff and defendant Currie, it is reasonably likely that Currie Enterprises funneled a substantial amount of money into Carlyle–Omni and The Moore Group. Defendant Currie thereby directly supported a secondary market for plaintiff's computer components. The market became flooded with unauthorized computer components resulting in significant harm to plaintiff. (Docket Entry # 205, ¶ 5). In short, because of defendant Currie's investment of money to support this market, it is reasonably likely that plaintiff suffered an investment injury. *See, e.g., Federal Information Systems Corporation v. Boyd*, 753 F.Supp. 971, 973 and 977–978 (D.D.C.1990) (plaintiff alleged investment injury given defendants' use and investment of racketeering income obtained through another corporation).

As a final matter, in addition to the standing requirement under section 1962(a), section 1964(c) of RICO provides that "any person injured in his business or property *by reason of* [emphasis added] a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the

---

**9.** As stated in footnote two in *Schofield:*
[S]ubsection (a) requires a showing of the source of income and proof that funds were channeled into the corporation. It also covers only wrongdoing involving money.

*Schofield v. First Commodity Corporation of Boston*, 793 F.2d at 31 & n. 2.

**32**

cost of the suit, including reasonable attorney's fee." 18 U.S.C. § 1964(c). In *Holmes v. Securities Investment Protection Corporation,* — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), an action based on securities fraud, the Supreme Court held that section 1964(c) requires a showing of proximate cause. *Id.* at —, 112 S.Ct. at 1317 (construing language in section 1964(c) "by reason of" in context of language contained in federal antitrust laws). The Court defined proximate cause as a "direct relation between the injury asserted and the injurious conduct alleged." Under this standard and without reiterating this court's prior Order (Docket Entry § 197), it is evident that plaintiff's injuries directly relate to defendant Currie's actions.

### CONCLUSION

For reasons stated above, the Currie defendants' renewed motion to modify the order of attachment and release escrow funds (Docket Entry # 203) and their motion to strike (Docket Entry # 209) are DENIED. The $3,000,000 attachment against the Currie defendants shall remain in effect.